UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ALAINE KAY,** *et al.***,**

    **Plaintiffs,**

**-v-**           Case No.: 2:09-cv-351
                                                     JUDGE SMITH
                                                     Magistrate Judge King

**AMERICAN NATIONAL RED CROSS,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant American National Red Cross's Motion for Summary Judgment and to Exclude the Expert Testimony of Ms. Sheryl Whitlock and Dr. Michael Stanton-Hicks (Doc. 81) and Defendant's Motion to Strike (Doc. 85).[1]  Plaintiffs[2] have filed their responses and Defendant has filed its replies.  These motions are now ripe for review.  For the reasons that follow, the Court **DENIES** Defendant's Motion to Strike and **DENIES** Defendant's Motion for Summary Judgment.

---

[1] The other Defendant named in the Complaint is John Doe No. 1 and identified in the Complaint as an "employee or agent of Defendant Red Cross and at all times material to the filing of this Complaint was acting within the course and scope of his or her employment or agency with Defendant Red Cross."  (Compl. ¶ 2).  However, at this time, Plaintiffs have not amended their Complaint to specifically identify John Doe No. 1.

[2] At the time of the incident, Plaintiff Alaine Kay was a minor and, therefore, her mother, Faye Kay, has also been named a Plaintiff.  Further, Plaintiffs assert that Plaintiff Faye Kay has incurred the expenses to care for her daughter.

## I.  BACKGROUND

On April 22, 2008, Defendant American National Red Cross (the "Red Cross") hosted a blood donation event at New Lexington High School in Perry County, Ohio.  Plaintiff Alaine Kay, then 17 years of age, was a student at New Lexington High School.  Plaintiff volunteered to donate blood at the mobile blood donation event.  Plaintiff had donated blood previously, however, she describes this time as significantly different.  (Compl. ¶¶ 1 and 3).

Jessica Covert, a phlebotomist employed by the Red Cross, attempted to conduct the phlebotomy procedure, or attempted to draw blood, on Plaintiff.  Plaintiff describes that when the needle was inserted in her arm, "the pain was significantly more intense than it had ever been and she looked down and saw blood running down her arm."  (Pls.' Memo. Contra at 1).  Plaintiff describes that at that point, Ms. Covert said that she was going to have to get the needle out.  Plaintiff describes that Ms. Covert was unable to remove the needle, so she went and got somebody else to come over and help her.  When the other individual came over to remove the needle, Plaintiff describes that she felt a twisting motion and experienced what was almost a blinding pain when the needle was finally removed.  She further describes that she was unable to keep her eyes open and had to be constantly told by Red Cross personnel that she needed to do so.  Plaintiff states that while still seated, she became dizzy.  She was told to hold gauze over her arm and was then allowed to lie down.  Plaintiff says she felt even more dizzy.

Plaintiff describes that after she left the Red Cross donation area, she felt very cold on her right side.  Plaintiff describes that her right arm was icy cold to the touch.  Shortly thereafter, one of her classmates touched Plaintiff's hand and Plaintiff describes that she experienced intense pain again.  Then, when Plaintiff looked down at her arm, it was purple.  Plaintiff describes the pain as

so bad that she was not able to hold a pencil. (Alaine Kay Depo. at 133-139). Later that same day, Plaintiff went to the nurse's station at school and, by that time, she had developed what the nurse characterized as a massive hematoma. (*See* Alaine Kay Depo. at 132-137).

Plaintiffs initiated this case in the Perry County Court of Common Pleas and Defendant removed the case to this Court on May 1, 2009. Plaintiffs allege that the phlebotomist who performed the attempted blood draw was negligent, that her performance of the attempted blood draw deviated from the standard of care, and that as a result, Plaintiff Alaine Kay has suffered serious injury. Plaintiff has been diagnosed by Dr. Michael Stanton-Hicks as suffering from Reflex Sympathetic Dystrophy ("RSD"), also known as Complex Regional Pain Syndrome ("CRPS"). Plaintiff's mother, Fay Kay, asserts a cause of action as a result of the medical expenses incurred on behalf of her daughter.[3]

The Court issued a case scheduling order on July 9, 2009, which required Plaintiffs to designate their expert witnesses by November 1, 2009. (*See* Doc. 9). Plaintiffs designated Dr. Michael Stanton-Hicks as their expert on November 5, 2009, however, no expert report was produced. On May 7, 2009, Dr. Stanton-Hicks was deposed by Defendant. Dr. Stanton-Hicks testified that he would not be offering any liability opinions with regard to the Red Cross or its employees in this case. He further testified that he would not be serving as an expert in this case and had no opinion as to whether any employee or agent of the Red Cross deviated from the standard of care owed during the blood donation event. (Stanton-Hicks Depo. at 10:2-1).

---

[3] Plaintiff Fay Kay's claim, the second cause of action for negligence, is derived from and based on the first cause of action for negligence.

Defendant moved for summary judgment on June 30, 2010. (*See* Doc. 37). In response to Defendant's Motion, Plaintiffs sought leave to introduce a new expert witness, Ms. Sheryl A. Whitlock, a medical technologist certified by the American Society for Clinical Pathology. The Court permitted Plaintiffs to introduce this expert and gave the parties until March 7, 2011, to depose Plaintiffs' expert. Plaintiffs filed their Memorandum Contra to Defendant's Motion on February 25, 2011. (Doc. 72). Defendant then filed a reply.

## II. SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (*quoting Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the

nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

Defendant the Red Cross has moved for summary judgment on Plaintiffs' two counts of negligence. Plaintiffs allege in their first cause of action that the Red Cross, via its employees, negligently attempted to draw blood from Plaintiff Alaine Kay's arm, thereby resulting in mental and physical injuries and a loss of earning capacity. (Compl. ¶¶ 4-7). In the second cause of action, Plaintiffs allege that because of the negligence of the Red Cross employees alleged in the first cause of action, Plaintiff Fay Kaye incurred expenses for the treatment of her daughter, who was a minor at the time of the blood donation. (Compl. ¶¶ 8-10). Defendant argues that there is no evidence that the Red Cross deviated from the standard of care and/or caused any injuries to Plaintiffs.

As a preliminary matter, Defendant has moved to exclude Plaintiffs' experts' testimony and moved to strike Plaintiffs' Expert Witness's June 3, 2011 affidavit. The Court will first address these expert witness issues and then move on to Plaintiffs' substantive claims.

**A.  Expert Testimony**

Defendant the Red Cross filed an initial Motion for Summary Judgment prior to Plaintiffs designating an expert to testify regarding the applicable standard of care. Now that Plaintiffs have designated their experts, Ms. Sheryl Whitlock and Dr. Michael Stanton-Hicks, Defendant has renewed its motion for summary judgment and has also moved to exclude Plaintiffs' expert witnesses under Rule 702 of the Federal Rules of Evidence. Additionally, Defendant has moved to strike the second affidavit of Ms. Sheryl Whitlock.

Defendant argues that neither of Plaintiffs' experts can offer more than a speculative opinion that there may be some relationship between the alleged negligence of the phlebotomist and Plaintiff Alaine Kay's injury.

Questions as to the admissibility of expert testimony are governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's interpretation of that rule in *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993), and later cases. The United States Supreme Court held in *Daubert* that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert*, 509 U.S. at 597.

Rule 702 specifically provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>     (b) the testimony is based on sufficient facts or data;
>     (c) the testimony is the product of reliable principles and methods; and
>     (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony, but also to other types of expert testimony based on technical or specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The trial court's gate-keeping role is two-fold. First, a court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be

grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994).

The Supreme Court in *Daubert* established four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94; *see also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert*, 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue; that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See*

Case: 2:09-cv-00351-GCS-NMK Doc #: 90 Filed: 01/30/12 Page: 9 of 20  PAGEID #: 948

*United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993).  Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value.  *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

Guided by the foregoing principles, the Court will consider Defendant's motion to exclude Plaintiffs' experts Ms. Whitlock and Dr. Stanton-Hicks and motion to strike the affidavit of Ms. Whitlock.

**1.     Ms. Whitlock**

**a.     Motion to Exclude Testimony**

Defendant the Red Cross states that it is not challenging Ms. Whitlock's qualifications as a medical technologist.  However, it argues that she is not a medical doctor and, therefore, is not qualified to offer medical opinions regarding the cause of Plaintiff's injury.  Additionally, Defendant argues that Ms. Whitlock's testimony is inadmissible because she is guessing and her theory is nothing more than an inadmissible hypothesis.  Finally, Defendant argues that Ms. Whitlock's testimony is unreliable, unsupported and contradicted by information that she failed to review in formulating her opinions. (Def.'s Mot. at 12-14).

Plaintiffs argue that Ms. Whitlock's testimony is reliable and should not be excluded.

-9-

Plaintiffs counter that Ms. Whitlock is not proffered as a medical expert, but rather as a standard of care expert. She has 33 years experience as a medical technologist, has taught didactic and laboratory courses in all areas of laboratory science, including phlebotomy and has held her current position as Laboratory Coordinator for Student Health Services at the University of Delaware for more than 12 years. Plaintiffs proffer that Ms. Whitlock's specialized knowledge will assist the trier of fact in understanding the standard of care of a phlebotomist performing a donor phlebotomy, and the risk of injury caused by an improperly performed venipuncture. The Court finds that Ms. Sheryl Whitlock is well qualified as an expert as to the standard of care of a phlebotomist.

Defendant challenges Ms. Whitlock's opinions asserting that they are unsupported because she reviewed only two deposition transcripts in this case and did not consider Dr. Stanton-Hicks testimony, nor any of the Red Cross's discovery responses or documents. Defendant argues that without reviewing this information, Ms. Whitlock cannot provide a reliable or admissible expert opinion as required by Rule 702. Plaintiffs counter that Ms. Whitlock's opinions in this case only relate to how this particular venipuncture was performed, therefore she reviewed Alaine Kay's deposition describing the procedure. She also reviewed Jessica Covert's deposition, who had no recollection of that specific procedure; nonetheless, this review provided Ms. Whitlock with Ms. Covert's knowledge, or lack thereof. Plaintiffs argue, and the Court agrees that Ms. Whitlock's testimony cannot be deemed unreliable because of what she didn't review. Dr. Stanton-Hicks deposition, Plaintiff's medical records, and the Red Cross' discovery responses that Defendant asserts should have been reviewed, do not provide any evidence regarding the manner in which the attempted blood draw was performed. Further, the Red Cross fails to explain how the materials that Ms. Whitlock didn't review render her opinions unreliable.

Finally, Defendant argues that Ms. Whitlock's opinion is premised entirely upon the incorrect assumption that Plaintiff suffered from a nerve injury. Plaintiffs, however, argue that this is a misrepresentation of the testimony. Ms. Whitlock stated that the only connection that she's aware of between a phlebotomy and CRPS is a nerve injury. (Whitlock Depo. at 154-55). Defendant contends that Dr. Stanton-Hicks "testified unequivocally that Ms. Kay did not suffer a nerve injury" and since she did not suffer a nerve injury, Ms. Whitlock's opinions should be excluded. Dr. Stanton-Hicks testified that he diagnosed Plaintiff with reflex sympathetic dystrophy ("RSD") based on the referring physician's diagnosis. He further explained that: "I make the statement simply because [RSD], or complex regional pain syndrome, CRPS, are one in the same, and the signs and symptoms can vary from time to time. It can also change as the condition is treated." (Stanton-Hicks Depo. at 19).

Dr. Stanton-Hicks further clarified that RSD and CRPS are the same and that there are two different forms of CRPS, CRPS-1 and CRPS-2. He explained that "CRPS-2 is the same physical findings, but in conjunction with a known nerve injury. So without there being an injury of a specific nerve, the diagnosis of CRPS1 would have to be made. 2 refers to what used to be called causalgia, and that was a term given to the injury during the Civil War in America by Mitchell." (Stanton-Hicks Depo. at 20). Plaintiffs provide additional information regarding the distinction between CRPS-1 and CRPS-2 based on the <u>Complex Interaction of Sensory and Motor Signs and Symptoms in Chronic CRPS</u>, PloS ONE 6(4), by Huge V., Lauchart M., Beyer A., Mochnle, P., *et al.* (2011). CRPS-1 patients have the involvement of the sympathetic nervous system, while CRPS-2 patients have involvement of a specified injured nerve. Type1 involves a nerve injury that is not immediately identifiable, while Type 2 involves a distinct major nerve injury that causes continuing pain long after

the event of an injury. Thus, patients suffering from both forms of CRPS have suffered a nerve injury. Based on this information, Plaintiffs argue that Defendant's argument fails because CRPS involves a nerve injury. Alaine Kay diagnosis of CRPS-1 merely involves injury to an unspecified nerve.

The Court therefore finds that Plaintiffs' expert, Ms. Whitlock, has displayed sufficient knowledge of the subject matter that her opinion will assist the trier of fact in evaluating this case. Defendant's complaints about Ms. Whitlock's opinions go to the weight of the testimony as opposed to their admissibility. The Sixth Circuit has held that "[i]n order to be admissible on the issue of causation, an expert's testimony need not eliminate all other possible causes of the injury." *Jahn v. Equine Services, PSC*, 233 F.3d 382, 390 (6th Cir. 2000) (The central issue in this case is whether Equine Services caused or failed to prevent Night Passage's untimely demise. In order to be admissible on the issue of causation, an expert's testimony need not eliminate all other possible causes of the injury. *See Ambrosini v. Labarraque*, 322 U.S. App. D.C. 19, 101 F.3d 129, 140 (D.C. Cir. 1996). "The fact that several possible causes might remain 'uneliminated' . . . only goes to the accuracy of the conclusion, not to the soundness of the methodology." *Id.*). Plaintiffs, as the proponents of the testimony, do not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. Here, the Court finds that Ms. Whitlock's opinions are reliable.

### b. Motion to Strike Affidavit

Defendant moves to strike Plaintiffs' Expert Ms. Sheryl Whitlock's June 3, 2011 affidavit, attached as Exhibit C to Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment. Defendant argues that the affidavit should be stricken for three reasons: (1) it presents a new theory of injury that was not previously disclosed pursuant to Rule 26(a)(2) of the Federal Rules

of Civil Procedure; (2) it makes assertions that contradict her previous deposition testimony; and (3) it is sham evidence, an attempt to create a factual issue.

Rule 12(f) of the Federal Rules of Civil Procedure specifically states:

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
(1) on its own; or
(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).

Rule 26(a)(2)(B) requires a party designating an expert witness to submit a report from that expert witness containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Defendant argues that Ms. Whitlock set forth four opinions in her report, but no where did she indicate the collective nature of Ms. Covert's errors caused Ms. Kay's harm. Defendant argues it is unfairly prejudicial to allow Plaintiffs to present this new theory that was not previously disclosed in her expert report, nor raised during her deposition. Defendant argues that had it been raised previously, it would have explored "how, exactly, she finds causation to arise cumulatively from opinions for which there is no evidence of harm individually." (Def.'s Mot. to Strike at 4).

Defendant additionally argues that Ms. Whitlock's second affidavit should be stricken from the record because the affidavit contradicts her earlier testimony. Defendant claims that Ms. Whitlock is now attempting to render a causation opinion which contradicts her deposition testimony in which she stated that she cannot say what caused Alaine Kay's harm.

Plaintiffs, however, argue that Rule 26(e) of the Federal Rules of Civil Procedure allows for

-13-

and requires a party to supplement disclosures previously made "if the party learns that in some material respect the disclosure or response is incomplete, or incorrect, and if the additional or corrective information has not otherwise been known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Defendant points out, and the Court agrees, that Rule 26(e) "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label." *Allgood v. Gen. Motors Corp.*, 2007 U.S. Dist. LEXIS 8126 (S.D. Ind. 2007). Further, "[i]t is not mere 'supplementation' when a party submits a manifestly incomplete report lacking analysis or a supporting rationale, waits for the summary judgment deadline to pass, and then submits a fuller report that contains actual reasoning." *Ullman v. Auto-Owners Mutual Ins. Co.*, 2007 U.S. Dist. LEXIS 25590 (S.D. Ohio 2007) (Frost, J.).

Unlike the aforementioned cases, Plaintiffs do not appear to be engaging in any type of gamesmanship. Plaintiffs assert, and the Court agrees, that Ms. Whitlock's second affidavit essentially follows along with the general scheme of the first affidavit. A district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the non-moving party's prior sworn testimony. *See Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984). If there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit "constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

Despite Defendant's arguments that Ms. Whitock's second affidavit contradicts her deposition testimony, the Court does not agree. Ms. Whitlock explains in her second affidavit that:

> During my deposition, counsel for the Defendant went through each of these errors that I have identified and asked me, with regard to each one individually, whether I had any evidence to suggest that Ms. Covert's negligence as to each negligent act that I identified caused Alain Kay to suffer any harm. To each of those questions, individually, I answered "no". What counsel for the Defendant did not ask me was whether I had an opinion regarding whether the collective nature of the errors committed by Ms. Covert caused Alain to suffer harm. My opinion on the combined effect of the errors is not the same as that rendered on each individual error.

Based on the aforementioned, the Court finds that Ms. Whitlock's second affidavit does not directly contradict her deposition testimony, but rather is a continuation or clarification of the deposition testimony. It is not unfairly prejudicial to Defendant to allow this affidavit into evidence as it is not a new theory of the case and Defendant had the opportunity to depose Ms. Whitlock. Nor does the Court find that Ms. Whitlock's second affidavit attempts to create a sham fact issue. Accordingly, Defendant's Motion to Strike is **DENIED**.

    **2.    Dr. Stanton-Hicks**

Defendant also argues that Dr. Stanton-Hicks' causation testimony should be excluded. Defendant asserts that Dr. Stanton-Hicks has not offered a written report and his testimony should be limited to his role as Ms. Kay's treating physician. Additionally, Defendant argues that any expert testimony that goes beyond his treatment and diagnosis of Ms. Kay with CRPS-1 should be excluded. Further, Defendant is concerned that any connection drawn by Dr. Stanton-Hicks between the April 22, 2008 blood drive and Ms. Kay's condition, (1) he bases the connection only upon temporal proximity, and (2) he does not link her condition to any negligence.

There is no question that Dr. Stanton-Hicks is qualified to offer testimony as Ms. Kay's treating physician. Further, his testimony will assist the trier of fact in evaluating this case. Similar to the issues raised with respect to Ms. Whitlock's expert testimony, Defendant's complaints are

-15-

more properly dealt with by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]" *Daubert*, 509 U.S. at 596. This Court's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations. The Court finds that both Ms. Whitlock and Dr. Stanton-Hicks' opinion testimony is relevant and reliable. Accordingly, Defendant's Motion to Exclude their testimony is **DENIED**.

**B.  Negligence Claims**

Plaintiffs allege two negligence claims against Defendant the Red Cross. First, that Defendant, via its employees, negligently attempted to draw blood from Plaintiff Alaine Kay's arm, thereby resulting in mental and physical injuries and a loss of earning capacity. Second, that as a result of the negligence of the Red Cross employees alleged in the first cause of action, Plaintiff Fay Kaye incurred expenses for the treatment of her daughter, who was a minor at the time of the blood donation. Defendant the Red Cross argues that there is no evidence that it deviated from the standard of care and/or caused any injuries to Plaintiffs. Specifically, Defendant asserts that neither of Plaintiffs' expert witnesses establish that the Red Cross's alleged negligence proximately caused Plaintiff's injuries.

Plaintiffs, however, argue that the testimony of Dr. Stanton-Hicks and Ms. Whitlock, combined, establish proximate causation as it relates to Alaine Kay's injuries. Plaintiffs assert that Ms. Whitlock establishes that the performance of the venipuncture by Jessica Covert was below the standard of care, that post-donation complications occurred, and that improper performance of the venipuncture significantly increases the risk of injury in what is typically an injury free procedure. Further, Dr. Stanton-Hicks testified that Plaintiff Alaine Kay suffers from Complex Regional Pain Syndrome caused by the attempted blood draw. (Pls.' Memo. in Opp. at 11). Even Defendant's

Case: 2:09-cv-00351-GCS-NMK Doc #: 90 Filed: 01/30/12 Page: 17 of 20 PAGEID #: 956

expert Dr. Flynn admitted that it is extremely uncommon for nerve injuries to occur if a phlebotomist performs the procedure correctly.

Defendant first asserts that Plaintiff Alaine Kay has not suffered any nerve injury, relying on Dr. Stanton-Hicks testimony (Stanton-Hicks Depo. at 33:6-7) and that RSD or CRPS can occur in the absence of negligence. (*Id.* at 11). However, it is important to recognize that Dr. Stanton-Hicks' testimony is that Ms. Kay did not have a specific known nerve injury. CRPS-2 is associated with a known nerve injury. Therefore, Dr. Stanton-Hicks testified that without a known injury to a specific nerve, the diagnosis of CRPS-1 would have to be made. Dr. Stanton-Hicks did testify that:

> Q. Have you informed your patient that you believe that the needle being removed traumatically during this attempted blood draw is what caused her RSD or CRPS?
> A. I can only associate the event of the blood draw with the subsequent development of the CRPS.
> Q. Do you believe that is the cause of her CRPS?
> A. Only that that was the proximate incident.
> Q. Is there any other, any other probable cause for her CRPS aside from that that you are aware of based on the history?
> A. I'm not aware of anything else, no.

(Stanton-Hicks Depo. at 75-76).

Defendant again argues with respect to Ms. Whitlock's testimony that she suggests that venipuncture can lead to nerve injury and that nerve injury can lead to a form of CRPS, but that all the evidence shows that the form of CRPS caused by a nerve injury is type 2. Defendant urges this Court to believe that Ms. Kay's CRPS-1 can arise in the absence of negligence and may be a genetic disorder. Defendant fails to even acknowledge the temporal proximity between the injury Ms. Kay sustained during the attempted blood draw and the development of CRPS-1.

>Plaintiffs expert witness, Ms. Whitlock opines that:
>
>The attempted blood draw conducted by Ms. Covert was below the standard of care. Procedural errors that reflect her negligence include: Failure to immediately remove the needle from Alaine's arm in spite of the presence of blood was running down her arm. As Covert admitted during her deposition, immediate removal of the needle is proper protocol when unexpected bleeding is observed. The procedural standard of care is immediate removal of the needle by the phlebotomist when unexpected bleeding is observed. Ms. Covert failed to observe this standard of care.
>
>The care provided after the termination of the blood draw also fell below the standard of care. Following termination of the blood draw, Alaine experienced dizziness. Alaine also stated that she was unable to keep her eyes open. She was instructed to apply pressure to the venipuncture site. As per Jessica Covert's admission during the deposition, the donor record included the Donor Complication Code (DCC) for Hematoma (H). The circumstances present following termination of the phlebotomy procedure included the presence of the hematoma, Alaine's dizziness, and her inability to keep her eyes open dictated the standard of care. Reflective of the existing circumstances, the standard of care is for the phlebotomist to assist in applying pressure to the venipuncture site. Ms. Covert failed to provide such assistance. Alaine applied pressure unaided.
>
>\*          \*          \*
>
>I am able to state, based upon a reasonable degree of scientific and professional certainty that a properly conducted venipuncture should not cause injury. The injury suffered by Alaine Kay was a natural and probable consequence of Jessica Covert's improper performance of the venipuncture, which includes post donation care, which deviated from and fell below the standard of care.

(Whitlock Aff. pp. 2-3).

In support of their argument, Plaintiffs rely on *Wilkerson v. Laboratory Corp. of America Holdings*, 2005 U.S. Dist. LEXIS 14136 (E.D. Pa. 2005), which involved a patient who sued defendant laboratory for damages for nerve injuries she sustained while having her blood drawn. The plaintiff in *Wilkerson*, like Plaintiff Alaine Kay, stated that she experienced burning and pain in her arm and was ultimately diagnosed with RSD. This case is distinguishable in that it applies Pennsylvania law, not Ohio law, and involved claims for negligent hiring and retaining of a

phlebotomist. Nonetheless, it provides guidance regarding the propensity for severe nerve injury as a result of a venipuncture. The *Wilkerson* court held that:

> Based on the applicable law, this Court finds sufficient evidence to raise a genuine issue of material fact regarding the foreseeability of Fullman's negligence. Specifically, the evidence indicates that the propensity for nerve injury during a venipuncture was common knowledge in the laboratory community between two and four years prior to the venipuncture in question, and certainly at the time of Fullman's hiring in 2002. (Plaintiff's Exhibit D, p. 56). In fact, even the Defendant's expert acknowledges that at all times relevant to this lawsuit, the propensity for severe nerve injury was widely known among phlebotomists. (Id.). It has further been shown that in hiring Fullman, LabCorp failed to ascertain whether she was aware of the possibility, prevention, and treatment of nerve injuries. (Defense Exhibits 1, 2). LabCorp also failed to offer Fullman training in such areas. (Id.). Thus, there is adequate evidence from which a reasonable jury could find Fullman's negligence foreseeable, as LabCorp should have known that failing to ensure Plaintiff's knowledge of nerve injuries could seriously harm individuals in the public.

*Id.* at *12-13.

Defendant correctly points out that there are other possible causes of Plaintiff Alaine Kay's injury, however, an expert's testimony need not eliminate all other possible causes of the injury. *See Ambrosini*, 322 U.S. App. D.C. 19. The fact that several possible causes might remain uneliminated only goes to the accuracy of the conclusion, not to the soundness of the methodology. *See Jahn,* 233 F.3d 382.

There is no question that a venipuncture or blood draw is generally an injury free procedure. Even Defendant's own expert acknowledges this. Defendant argues that because the injuries Plaintiff Alaine Kay sustained can occur even in the absence of negligence means that Plaintiffs cannot prove that the negligence of Jessica Covert is what caused Plaintiff's injury. However, because the injury could occur in the absence of negligence doesn't mean that Ms. Covert's negligence was not the proximate cause of Plaintiff's injury. It is troubling that Ms. Kay experienced immediate problems

during the blood draw and ultimately developed CRPS-1.  Further, there does not appear to be any evidence suggesting a predisposition toward this type of injury.  Construing all the evidence in favor of Plaintiffs, the non-moving party, there is a genuine issue of material fact regarding the proximate cause of Plaintiff Alaine Kay's injuries.

### IV.   CONCLUSION

Based on the above, the Court **DENIES** Defendant's Motion to Strike and **DENIES** Defendant's Motion for Summary Judgment.

The Clerk shall remove Documents 81 and 85 from the Court's pending motions list.

**IT IS SO ORDERED.**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**